**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSHUA STEELE,**

|  |  |
|---|---|
| **Petitioner,** | **Case No. 2:13-cv-1267** |
| **v.** | **Judge Graham** |
|  | **Magistrate Judge King** |

**WARDEN, MANSFIELD
CORRECTIONAL INSTITUTION,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

    Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, ECF 3, Respondent's *Return of Writ,* ECF 9, Petitioner's *Traverse,* ECF 16, Respondent's *Response,* ECF 17, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

    The Ohio Fifth District Court of Appeals summarized the facts and procedural history as follows:

> Beginning in 2006, Rich and Mindy Lyons, along with their three children Jonathan, Nicole, and victim J.L., lived on a rented farm. In 2009, Steele, Mr. Lyons' nephew, moved into the Lyons' home so Steele could be closer to his employment at a nearby golf course. Steele left for work daily at approximately 6:30 a.m. and returned to the home at approximately 3:00 p.m., at which time the family members would perform various chores, eat dinner, and watch movies. Due to a recent back surgery, Mr. Lyons went to sleep by 10:00 p.m. while Mrs. Lyons worked third shift at a local factory from 8:30 p.m. until 6:00 a.m.
>
> After Mr. and Mrs. Lyons went to either sleep or work respectively, Steele, J.L., and her sister Nicole would often watch movies in the basement of the home. However, Nicole would go to

1

bed at which time Steele would make his cousin J.L. touch him and have sex with him. This occurred almost every night. According to J.L., Steele first tried to persuade J.L. to engage in sexual activity by buying her items such as Monster energy drinks. When J.L. refused Steele's advances, he began molesting her by forcing J.L. to masturbate him and later progressed to forced oral and vaginal sex. J.L. testified that forced sexual encounters occurred in the living room, basement, and bedroom.

Mr. and Mrs. Lyons were unaware of Steele's victimization of J.L. even though they viewed several suspicious activities that were later determined to be indicators of Steele's molestation of J.L. For example, Mrs. Lyons was awakened late one night by the family dog barking in J.L.'s room. Mrs. Lyons found Steele in the room supposedly to retrieve "movies." Further, Mr. Lyons viewed Steele alone with J.L. on one occasion during which Mr. Lyons observed Steele to have "pinned" a crying J.L. between their house and a line of cars. J.L. also began sleeping with her father or had the family dog sleep with her as well in an effort to try to stop Steele's unwanted sexual advances. Moreover, while Steele lived with the Lyons' family, J.L. was very depressed and refused to socialize with anyone, which was completely different from her "happy normal self" and her demeanor as a "happy go lucky kid."

J.L. did not disclose Steele's criminal actions until roughly one year later because she was "scared" of him after he previously held a knife up to her arm and was further "worried about getting in trouble" by her parents. J.L. eventually told a friend about Steele's acts and the friend stated she would tell J.L.'s parents even if J.L. refused to do so. As a result, J.L. eventually disclosed to her parents on March 7, 2010, that Steele molested her. Mr. Lyons subsequently called the Delaware County Sheriff's Office. Detective Christina Burke was assigned to investigate J.L.'s case. Steele spoke to Detective Burke and denied all of the allegations.

PROCEDURAL HISTORY

On March 25, 2011, an indictment (Case No. 11 CRI 03 0176) was filed in the Delaware County Common Pleas Court charging Steele, with four counts of rape, all violations of Ohio Revised Code Section 2907.02(A)(2), four counts of Unlawful Sexual Conduct with a Minor, all violations of Ohio Revised Code Section 2907.04(A), one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(1), and three counts of Gross Sexual Imposition, all violations of Ohio Revised Code Section 2907.05(A)(4).

The original case was dismissed and Steele was re-indicted on August 26, 2011 (Case No. 11 CRI 08 0463). The new indictment charged Steele with five counts of rape, all violations of Ohio Revised Code Section 2907.02(A)(2), five counts of Unlawful Sexual Conduct with a Minor, all violations of Ohio Revised Code Section 2907.04(A), one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(1), and one count of Gross Sexual Imposition, a violation of Ohio Revised Code Section 2907.05(A)(4).

Nine items retrieved from the Lyons' home were submitted to the Ohio Bureau of Criminal Identification and Investigation [BCI & I] for DNA testing. The first five items were pieces of physical evidence obtained from Steele's living quarters in the basement of J.L.'s home: a couch cover, a washcloth, a sleeping bag, a fitted sheet, and a flat sheet. The last four items submitted were DNA samples obtained from J.L., her sister Nicole, her brother Jonathan, and Steele to be used for comparison.

According to the report, the sleeping bag was found to contain semen and was also found to be presumptive for the presence of blood. However, subsequent testing at BCI & I indicated that a probative DNA sample could not be obtained.

During the course of trial preparation, the state learned the four other physical items taken from Steele's living quarters were also tested by BCI & I and tested positive for either semen or seminal fluid. At the final pre-trial conference held September 2, 2011, the state asked for a continuance of the September 6, 2011 trial date in order for the test results to be completed and supplied to Steel's attorney in compliance with Crim.R .16(K). Steele objected to the continuance. As a result, the trial court denied the state's request to continue the trial and ruled the new evidence was not admissible at trial. (3T. at 270–271; 5T. at 470–471).

Trial commenced on September 6, 2011. After the close of evidence on the first day of trial Steele's attorney received a copy of the DNA report. According to the report, the results of the DNA comparison reveal that the

> Differential extraction of the couch cover (item 1.1) resulted in a mixture of at least two individuals and is consistent with contributions from Joshua Steele. No conclusions can be made regarding [J.L.], Nicole Lyons and Jonathon Lyons as possible contributors to the

mixture." Furthermore, "the differential extraction of the washcloth (item 2.1) resulted in a single DNA profile from an unknown female" and that the "differential extraction of the fitted sheet (Item 4.1) and the flat sheet (Item 5 .1) resulted in a single DNA profile from the same unknown male." Furthermore, the results revealed, "[J.L.], Nicole Lyons, Jonathon Lyons and Joshua Steele are not the source of the DNA from the washcloth, the fitted sheet or the flat sheet.

At trial, the State introduced a copy of a laboratory report produced by Sarah Glass, a forensic biologist with the BCI & I, as State's Exhibit 18. This evidence was limited to the evidence pertaining to the sleeping bag. In addition, J.L., her parents Richard and Mindy Lyons, therapist Marjan Cuckler, testified on behalf of the state.

At the conclusion of the state's case-in-chief, the trial court granted Steele's Crim.R. 29 Motion for Acquittal regarding Count Twelve of the Indictment. Count Twelve concerned a previous occurrence of sexual conduct by Steele against J.L. at a location in Franklin County, which occurred sometime between 2001 and 2004. During this incident, J.L., who was age six at the time, stayed at the residence of Steele's parents while her parents were out of town. J.L. testified that during that visit, she was lying on her side on a bed when Steele lay behind her and placed his erect penis against her buttocks while both were clothed. The trial court noted Count Twelve was alleged to have occurred between 2001 and 2004 while the other counts occurred five years later in 2009 at a different location. Accordingly, the trial court granted Steele's Crim.R. 29 motion regarding Count Twelve.

Steele testified in his own defense. His mother Pamela Steele testified concerning her knowledge of the facts. Norma Wells, a neighbor, testified as to Steele's character. Nicole Lyons, who is J.L.'s sister, testified on Steele's behalf as to her personal observations of Steele and J.L. The state then called Richard Lyons as a rebuttal witness.

The jury returned with guilty verdicts on Count Two (Unlawful Sexual Conduct with a Minor, F3), Count Four (Unlawful Sexual Conduct with a Minor, F3), Count Five (Rape, F1), Count Six (Unlawful Sexual Conduct with a Minor, F3), Count Eight (Unlawful Sexual Conduct with a Minor, F3), Count Nine (Rape, F1), Count Ten (Unlawful Sexual Conduct with a Minor, F3), and Count Eleven (Gross Sexual Imposition (Force), F3). The jury

> made findings of Not Guilty on Counts One (Rape), Three (Rape),
> and Seven (Rape).

*State v. Steele*, No. 2011-CA-110, 2012 WL 3574716, at *1-3 (Ohio App. 5th Dist. Aug. 17,

2012). The convictions were affirmed on appeal, *id.*, and on January 23, 2013, the Ohio

Supreme Court denied Petitioner's appeal. *State v. Steele*, 134 Ohio St.3d 1420 (2013).

On December 26, 2013, Petitioner filed this action for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. He asserts that the trial court improperly denied his motion for a new trial

(claims one and three), that the evidence is constitutionally insufficient to sustain his convictions

and the trial court improperly denied his motion for judgment of acquittal (claim two), and that

his convictions are against the manifest weight of the evidence (claim four).

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective

Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court

determinations. The United State Supreme Court recently described AEDPA as "a formidable

barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"

and emphasized that courts must not "lightly conclude that a State's criminal justice system has

experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v.*

*Titlow,* ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* 562 U.S.

86, 102, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA

. . . imposes a highly deferential standard for evaluating state-court rulings, and demands that

state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and

footnote omitted).

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

28 U.S.C. § 2254(e)(1). Habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d)(1); *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). *See also* 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent
> if (1) "the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law[,]" or (2) "the
> state court confronts facts that are materially indistinguishable
> from a relevant Supreme Court precedent and arrives" at a
> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an
> "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it
> "identifies the correct governing legal rule from [the Supreme]
> Court's cases but unreasonably applies it to the facts of the
> particular ... case" or either unreasonably extends or unreasonably
> refuses to extend a legal principle from Supreme Court precedent
> to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146
> L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, ——U.S. ——, ——, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palme*r, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

**Claim One**

In claim one, Petitioner alleges that the trial court erred in denying his motion for a new trial based on improper amendment of the *Indictment. See Traverse*, ECF 16, PageID# 1489.  At the close of the State's case in chief, but before the prosecution formally rested its case, the trial court granted the State's request to amend the *Indictment* to indicate that the alleged offenses

occurred between March 1, 2009 and September 1, 2009, rather than between May 1, 2009 and

September 1, 2009, as was originally charged.  The state appellate court dismissed this claim,

reasoning as follows:

> Steele maintains that the trial court erred in not granting him a new trial based upon the state's amendment of the *Indictment*.
>
> In the case *sub judice*, at the close of the state's presentation of evidence and immediately prior to resting its case, the state moved to amend the time period alleged in the *Indictment* pursuant to Criminal Rule 7(D). The amendment expanded the time period contained in the *Indictment* from "May 1, 2009 through September 1, 2009," to "March 1, 2009 through September 1, 2009." (5T. at 450).
>
> Crim.R.33, provides the procedure for obtaining a new trial, state, in part,
>
>> (A) Grounds
>>
>> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>>
>> (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
>>
>> (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
>>
>> (3) Accident or surprise which ordinary prudence could not have guarded against;
>>
>> (4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;
>>
>> (5) Error of law occurring at the trial;
>>
>> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the

defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

\* \* \*

(E) Invalid grounds for new trial.  No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

(1) An inaccuracy or imperfection in the indictment, information, or complaint, provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him.

(2) A variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby;

(3) The admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby;

(4) A misdirection of the jury, unless the defendant was or may have been prejudiced thereby;

(5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial.

The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion that has adversely affected substantial rights of the accused such that a fair trial is no longer possible. *State v. Garner,* 74 Ohio St.3d 49, 656 N.E.2d 623, 1995–Ohio–168; *State v. Glover,* 35 Ohio St.3d 18, 517 N.E.2d 900 (1988); *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2nd Dist. 1988).

Steel's argument concerns the amendment of the *Indictment* to include the months of March and April 2009. Steele argues that the state "amended an element of the offense which it failed to prove in its case in chief." [Appellant's Brief at 6].

Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The state is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. *State v. Adams*, 5th Dist. No. 02–CA–00043, 2002–Ohio–5953 at ¶ 8.

If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not "*per se* impermissible or necessarily fatal to a prosecution." *State v. Robinette*, 5th Dist. No. CA–652, 1987 WL 7153 (Feb 27, 1987). The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. *State v. Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985); *State v. Gingell*, 7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071 (1st Dist. 1982); *State v. Kinney*, 35 Ohio App.3d 84, 519 N.E.2d 1386 (1987).

As this court has noted: "[t]ime is neither essential nor an element of the crime of sexual battery." *State v. Robinette, supra*. In *Robinette*, this court stated,

> We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84–04–031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.
>
> In *State v. Sellards*, the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C. 2907.02(A)(3)." *Sellar*ds, 17 Ohio St.3d at 172, 478

10

N.E.2d at 785. The second situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to produce a greater degree of specificity would unquestionably prejudice the defense." *Id*. The *Sellards* court noted,

The record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense. In this regard, we note that while appellee claims on appeal that the inexactitude of the indictment and bill of particulars as to date denied him the ability to present an alibi defense, appellee never filed a notice of intent to rely on an alibi as is required by Crim.R. 12.1. (*Cf. State v. Dingus* [1970], 26 Ohio App.2d 131, 137, 269 N.E.2d 923 [55 O.O.2d 280]; *Gingell, supra*, at 368, 455 N.E.2d 1066.)

17 Ohio St.3d 169, 478 N.E.2d 781(1985).

In the case at bar, Steele could have, but did not, request a continuance in response to the trial court's decision to amend the indictment. Further, we find that Steele was fully aware the time during which the crimes were alleged to have occurred is the time that he lived in the Logan's home. Steele did not deny that he lived there. Steele did not file a notice of alibi for any of the period set forth in the original indictment. J.L. testified at trial and Steele fully cross-examined her concerning the time during which the crimes had occurred and the fact that the dates included the spring and summer months. (4T. at 336–339; 354–357).

Steele has not demonstrated that the inclusion of March and April 2009 in the case was material to any defense theory he put forth at trial; rather he makes only a generalized assertion.

The inexactitude of temporal information did not truly prejudice Steele's ability fairly to defend himself. In addition, we find that Steele was adequately apprised of the crimes against him and was not denied a fair trial.

Accordingly, the trial court did not abuse its discretion in denying Steele's motion for a new trial.

*State v. Steele*, 2012 WL 3574716, at *3-6.

Petitioner claims that the state appellate court erroneously concluded that he had failed to

establish prejudice by virtue of the amendment of the dates referred to in the *Indictment*.

Referring to, *inter alia*, *Russell v. United States*, 369 U.S. 749 (1962) and *Valentine v. Konteh*,

11

395 F.3d 626 (6th Cir. 2005),[1] Petitioner argues that the *Indictment* improperly charged him with multiple and undifferentiated counts of rape. *Traverse*, PageID# 1493; 1495.   He claims prejudice by reason of the amendment of the *Indictment* because one aspect of his defense was that he did not reside at the residence when the acts were originally alleged to have occurred, *i.e.*, between May 1, 2009, and September 1, 2009, and he could not change that defense when the *Indictment* was amended to include the months of March and April.   *Traverse*, PageID# 1496-99.   Similarly, Petitioner argues that amendment of the *Indictment* unfairly forced him to testify on his own behalf.  *Id.* at PageID# 1499-1500.   He contends that amendment of the *Indictment* exposed him to conviction for crimes on which he had not been indicted.  *Id.* at PageID# 1500-1501.

It is the position of the Respondent that Petitioner failed to fairly present this claim as one of federal constitutional magnitude in the state appellate court.   Respondent also argues that Petitioner failed to raise the same arguments in the Ohio Court of Appeals that he does in these proceedings.   That being the case, Respondent argues, Petitioner has waived his right to this Court's consideration of this claim.

**Exhaustion**

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).   This rule applies "both to entirely new legal claims and new factual bases for relief[.]"  *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).   Although this fair presentment requirement is not a component of jurisdiction, *see*

---

[1] *Russell* stands for the proposition that, to be constitutionally sufficient, an indictment must contain the elements of the charged offense, provide adequate notice of the charges, and protect the defendant against double jeopardy. In *Valentine*, the United States Court of Appeals for the Sixth Circuit held that the assertion of "multiple, identical and undifferentiated counts" of sexual abuse violated due process.  *Valentine,* 395 F.3d at 630.

*Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), the requirement is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any of four ways: (1) reliance on federal cases employing constitutional analysis; (2) reliance on state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

Petitioner framed this claim in the state court of appeals as follows: "The trial court committed reversible error by denying the defendant-appellant's Criminal Rule 33 motion for a new trial based upon the State's amendment of the complaint."  *Exhibit 15* to *Return of Writ*, ECF 9-2, PageID# 476 [sic].  Petitioner argued that the trial court's ruling conflicted with Ohio Criminal Rule 1(B) and Ohio Criminal Rule 33 and failed to provide the notice required by the Ohio Constitution.  *Id.* at PageID# 481-82; 485.  Noting that Ohio's guarantee of indictment by a grand jury affords an accused notice, an opportunity to defend, and protection against future prosecutions for the same offense, Petitioner argued that the amendment of the *Indictment* during trial deprived him of these rights.  *Id.* at PageID# 482.  In support of this argument, Petitioner referred to *State v. Sellards*, 17 Ohio St.3d at 170 (holding that Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution entitle a person accused

of a felony to an indictment setting forth the "'nature and cause of the accusation.'").[2]  Citing to

*City of Cincinnati v. Woods*, 322 N.E. 2d 303, 304 (Ohio App. 1st. Dist. 1974), Petitioner also

argued that the amendment of the *Indictment* violated Ohio Criminal Rule 7(D). *Id.* at PageID#

482-83.[3]  Petitioner also referred to a number of Ohio cases:  *State v. Garfield*, No.

09CA009741, 2011 WL 2120063 (Ohio App. 9th Dist. May 31, 2011)(considering whether the

trial court had abused its discretion or the terms of Rule 7(D) in denying a motion for a new trial

where the defendant did not request a continuance); *State v. Switzer*, No. 2008 CA 0069, 2009

WL 1601027 (Ohio App. 5th Dist. June 3, 2009)(finding no abuse of discretion in the denial of a

motion for a new trial based on the defendant's failure to request a continuance following the

amendment of an indictment); *State v. Picard*, No. 2009 CA 0108, 2010 WL 5480653, at *12

(Ohio App. 5th Dist. Dec. 20, 2010)(stating that Rule 7(D) does not permit an amendment of the

---

[2] The Ohio Supreme Court stated in relevant part in *Sellards*:

 Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a
statement that the accused has committed some public offense therein specified.  See, also, R.C.
2945.83(A); Crim.R. 7(B).  The General Assembly, in declaring what shall be sufficient in an
indictment, provided, among other things, that it shall be sufficient if it can be understood that the
offense was committed at some time prior to the time of the filing of the indictment.  R.C.
2941.03(E).  It is also provided, in R.C. 2941.08, that "[a]n indictment of information is not made
invalid, and the trial, judgment, or other proceedings stayed, arrested or affected: *** (C) For
stating the time imperfectly[.]"  The Ohio Supreme Court then went on to discuss the issue in
terms of state law.

[3] Ohio Criminal Rule 7(D) provides:

 The court may at any time before, during, or after a trial amend the indictment, information,
complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or
substance, or of any variance with the evidence, provided no change is made in the name or
identity of the crime charged. If any amendment is made to the substance of the indictment,
information, or complaint, or to cure a variance between the indictment, information, or complaint
and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a
jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole
proceedings that the defendant has not been misled or prejudiced by the defect or variance in
respect to which the amendment is made, or that the defendant's rights will be fully protected by
proceeding with the trial, or by a postponement thereof to a later day with the same or another
jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense
charged in the amended indictment, information, or complaint. No action of the court in refusing a
continuance or postponement under this division is reviewable except after motion to grant a new
trial therefor is refused by the trial court, and no appeal based upon such action of the court shall
be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing
court finds that a failure of justice resulted.

indictment to change the penalty or degree of offense charged so as to alter the identity of the crime); *State v. Ward*, No. 74AP-143, 1974 WL 184458 (Ohio App. 10th Dist. Nov. 26, 1974)(considering whether the trial court violated O.R.C. § 2941.39 and Rule 7(D) by permitting amendment of the indictment to change the date of the offense charged); *State v. Grimm*, No. CA85-06-031, 1985 WL 7770 (Ohio App. 12th Dist. Oct. 21, 1985)(considering whether amendment of the indictment violated state law). Finally, Petitioner argued that the trial court's denial of his motion for a new trial constituted a "failure of justice, offended the Sixth Amendment to the United States Constitution and was contrary to the purpose and construction of the [Ohio] Rules of Criminal Procedure[.]" *Id.* at PageID#  485.

The Court is persuaded that Petitioner fairly presented his claim to the state courts as one of federal constitutional magnitude. Although he did not refer to federal cases in support of his claim, or to state cases that relied on federal law, he expressly invoked the United States Constitution and argued that the amendment of the *Indictment* denied him fair notice of the crimes charged, the ability to present a defense, and the protection against double jeopardy. These are the same basic requirements demanded under the Due Process Clause. *Valentine v. Konteh*, 395 F.3d at 631 (citing *Russell*, 369 U.S. 749)). The state appellate court likewise appears to have taken these issues into consideration in affirming the trial court's denial of Petitioner's motion for a new trial. Further, "motions for new trial filed before a state defendant initiates his or her state direct appeal, and subsequently reviewed during that direct appeal . . . do not preclude a federal habeas court from reviewing the denial of the motion for new trial for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 607 (6th Cir. 2009).

However, Petitioner raises in this case new arguments, or legal theories, in support of his claim that he did not present to the Ohio Court of Appeals. Petitioner did not argue before the

states courts, as he does here, that the *Indictment* violated the United States Constitution because it charged him with multiple undifferentiated counts of sexual abuse, or that "the counts in the indictment were extracted from an alleged pattern of undifferentiated sexual abuse," *Traverse,* ECF 16, PageID# 1495, nor did he alert the state appellate court of such claim by making general allegations of the denial of due process. Petitioner did not refer to the Sixth Circuit's decision in *Valentine,* 395 F.3d 626,[4] or to any other cases discussing the potential insufficiency of an *Indictment* on this basis.[5] Similarly, Petitioner did not argue in the state appellate court that the amendment of the *Indictment* forced him to testify on his own behalf. He did not claim prejudice based on the planned theory of defense that he did not reside in the home during May 1, 1009 to

---

[4]

> Valentine was convicted of 20 "carbon-copy" counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded. The prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial. The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and estimated the number of times the abusive offenses occurred "about 20," "about 15," or "about 10" times. The District Court issued the writ of habeas corpus with respect to all counts on the ground that the indictment and conviction violated Valentine's federal due process rights to notice of the crime charged with sufficient specificity so that he would not again be put in jeopardy of the same crime.

*Valentine,* 395 F.3d at 628. The Court of Appeals also affirmed the grant of a writ in that case, although it did uphold the petitioner's conviction on one count of child rape and one count of felonious sexual penetration. It set aside the remainder of the convictions, concluding that, although the petitioner

> had notice that he was charged with the two separate crimes during the period of time specified in the indictment ... he had no way to otherwise identify what he was to defend against in the repetitive counts and no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted. Thus, we regard the 20 child rape counts as charging one crime and the 20 penetration counts as charging another single crime.

*Id.,* at 628–629. Although the indictment in *Valentine* adequately set forth the elements of the offenses charged, the Court of Appeals held that, under the particular facts of that case, the use of "multiple, undifferentiated charges violated Valentine's right to notice of the charges against him and his right to be protected from double jeopardy." *Id.*, at 631.

[5] The *Indictment* does not appear to have contained multiple undifferentiated charges. See ECF 9-1, PageID# 195-201.

September 1, 2009.  The state appellate court could not consider his claim based on arguments that were not before it.

In this Court's view, Petitioner's claim that the *Indictment*, as amended, unconstitutionally charged him with multiple undifferentiated charges or caused him to be convicted on testimony involving undifferentiated multiple acts not charged presents a new theory that is separate and distinct from that which was considered by the state courts.  *See Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012)("Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review.")(citing *Lyons v. Stovall*, 188 F.3d 327, 332–33 (6th Cir.1999); *Pillette v. Foltz*, 824 F.2d 494, 497–98 (6th Cir.1987));  *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)(same)(citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987)).  Petitioner has failed to show cause for this failure, and this claim is therefore barred from review by this Court.

Likewise, Petitioner cannot now obtain review of his claim based on facts that he never presented to the state appellate court.  "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim."  *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)(citations omitted)); *Olson v. Little*, -- Fed.Appx. –, 2015 WL 1004461, at *12 (6th Cir. 2015)(same)(citations omitted)).

In *Cullen v. Pinholster*, 131 S.Ct. at 1398–1399, the United States Supreme Court held:

> [R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time-*i.e.,* the record before the state court.

> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "The federal habeas scheme leaves primary responsibility with the state courts...." *Visciotti, supra*, at 27, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.
>
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of "the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). . . .  It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

*Id.*

This Court will therefore address the merits of this claim as Petitioner presented it to the Ohio courts.

**Merits**

Due process requires that an indictment contain the elements of the offense charged, provide sufficient notice of the charges, and protect a defendant against double jeopardy. *Valentine*, 395 F.3d at 631.

> [W]hatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *See, e.g., In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir.1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir.1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and

certainty are required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d [695,] 698 [(6th Cir. 1976].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

Petitioner contends that the *Indictment,* as amended, failed to meet these requirements. This Court is not so persuaded. As noted by the Ohio Court of Appeals, Petitioner supported this argument with only generalized assertions, and concluded that "[t]he inexactitude of temporal information did not truly prejudice Steele's ability fairly to defend himself." *State v. Steele,* 2012 WL 3574716, at *6. This Court agrees with that conclusion. The amended *Indictment* did no more than add two additional months to the time span during which the acts were alleged to have taken place. Petitioner fails to indicate the manner in which such an amendment could have subjected him to subsequent prosecution on the same criminal acts. The amended *Indictment* charged Petitioner with five counts of rape, in violation of § 2907.02(A)(2), five counts of unlawful sexual conduct with a minor, in violation of § 2907.04(A), and two counts of gross sexual imposition, in violation of § 2907.05(A)(1) and § 2907.05(A)(4), respectively. It tracked the language of the statutes charged. The trial court granted Petitioner's motion for judgment of acquittal on Count 12 and the jury found him not guilty on Counts 1, 3, and 7. The charges all involved separate criminal acts occurring in the living, basement and bedroom of the residence. Under Ohio law, time is not an element of the crime of sexual battery and was not essential to establishing Petitioner's guilt. The state appellate court made factual findings, including the finding that Petitioner "was fully aware" that the time period during which all of the charges were alleged to have occurred was during the time that he lived in the Logan home. *State v. Steele*, 2012 WL 3574716. The fact that Petitioner could have, but did not, request a continuance based on the amendment to the *Indictment* undercuts his argument that he needed

additional time to conduct an adequate defense to the *Indictment,* as amended.  "Steele fully cross-examined [the alleged victim] concerning the time during which the crimes had occurred and the fact that the dates included the spring and summer months.  *Id.*

For all of the foregoing reasons, the Court concludes that claim one lacks merit.

## Claims Two and Four

In claims two and four, Petitioner alleges that the evidence is constitutionally insufficient to sustain his convictions on rape and gross sexual imposition as charged in Counts 5, 9, and 11 of the *Indictment,*[6] and that his convictions are against the manifest weight of the evidence. *Traverse,* PageID# 1484; 1504-05.  Petitioner acknowledges that a claim based on the manifest weight of the evidence fails to present an issue appropriate for federal habeas corpus relief; he clarifies that all of his arguments are to be considered in support of his claim of insufficiency of the evidence.  *Id.* at PageID# 1488 n.1.

The state appellate court denied this claim as follows:

> Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v.. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.
>
> ***
>
> In the case at bar, Steele was convicted of Rape, Unlawful Sexual Conduct with a Minor, and Gross Sexual Imposition.

---

[6]  Petitioner also raises this claim in terms of an alleged violation of Rule 29 of the Ohio Rules of Criminal Procedure, which authorizes the dismissal of a charge if there is insufficient evidence to support conviction.  The Court will not address this state law claim.  *See* 28 U.S.C. § 2254(a).

In order to convict Steele of Rape pursuant to R.C. 2907.02(A)(2), the state had to prove he engaged in sexual conduct with J.L. by force or threat of force.

"Corroboration of victim testimony in rape cases is not required. *See State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson*, 112 Ohio St .3d 210, 217, 2006–Ohio6404 at ¶ 53, 858 N.E.2d 1144, 1158.

In the case at bar, J.L. testified to specific acts occurring in the living room, basement and bedroom. Steele forced her to touch his erect penis and then to have oral or vaginal sex.

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Steele had sexual conduct with J.L. and further that he committed the crimes of Rape. We hold, therefore, that the state met its burden of production regarding each element of the crimes of rape and, accordingly, there was sufficient evidence to support Steele's convictions for Rape.

\*\*\*

J.L. testified that Steele forced her to have vaginal intercourse in the living room, in which he used a blanket to cover-up; the basement during which he used a sleeping bag to cover-up; and in J.L.'s bedroom.

\*\*\*

Steele was also convicted of Gross Sexual Imposition pursuant to R.C. 2907.05(A)(1), which prohibits "sexual contact" when the offender purposely compels the other person to submit by force or threat of force. "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. 2907.01. Accordingly, touching the "erogenous zone" is what is prohibited.

J.L. testified that during the living room incident, Steele grabbed her hand and pulled it over to his penis.

21

> Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Steele had sexual contact with J.L. and further that he committed the crime of Gross Sexual Imposition. We hold, therefore, that the state met its burden of production regarding each element of the crimes of Gross Sexual Imposition. Accordingly, there was sufficient evidence to support Steele's conviction for Gross Sexual Imposition.
>
> In addition to J.L.'s testimony, we note the state presented circumstantial evidence to support the charges. J.L.'s mother and father testified as to her demeanor before, during, and after Steele's repeated sexual assaults. Evidence was presented to show that J.L. strangely began sleeping in her parents' bed while Steele was staying with the family. J.L.'s father testified that he was only awakened by J.L. one time while Steele was living at the residence during which J.L. crawled into his bed, began crying, and refused to tell her father the reasons. Further, forensic scientist Sarah Glass described how she located semen from a sleeping bag in the basement of the home at issue.

*State v. Steele*, 2012 WL 3574716, at *7-11.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. To determine whether the evidence was sufficient to support Petitioner's conviction, this Court must view the evidence in the light most favorable to the prosecution. *See Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume - even if it does not appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson*, at 326).

Under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191,

205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Thus, even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome. Additionally, the factual findings of the state appellate court are presumed to be correct and a petitioner has the burden of rebutting the correctness of these findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner does not challenge his convictions for unlawful sexual conduct with a minor. *See Traverse*, ECF 16, PageID# 1484. He asserts that the evidence is constitutionally insufficient to sustain his convictions for rape and gross sexual imposition, specifically arguing that there was insufficient evidence of force or the threat of force to commit the acts charged. Ohio law defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." O.R.C. § 2901.01(A)(1). The trial court instructed the jury:

> Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing.
>
> Threat includes a direct and indirect threat.
>
> The prosecution need not prove that [J.L.] physically resisted the defendant.

*Trial Transcript*, *Vol. VI*, attached to *Return of Writ*, PageID# 1381-82.

In *State v. Eskridge*, 38 Ohio St.3d 56 (Ohio 1988), the Ohio Supreme Court clarified the meaning of force and held that, when a case involves a child under the age of thirteen, only minimal force or threat of force need be established.  *Id.* at 58-59.

> While the record could have been more explicit on the amount of force involved, in light of all the circumstances, *i.e.*, the child's testimony, the child's tender age, and the relationship of parental authority that defendant had with his four-year-old daughter, we find substantial evidence from which the trial court could have found beyond a reasonable doubt that Eskridge committed the act with force. "The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength." *State v. Labus* (1921), 102 Ohio St. 26, 38 - 39, 130 N.E. 161, 164. In the present case, the victim testified that Eskridge removed her panties and there was testimony that he laid her on the bed - both acts of compulsion and constraint that are independent of the act of rape. The victim's testimony also expressed her revulsion at her father's conduct. Further, we note the age difference and disparity in size between Eskridge, a twenty-eight-year-old man, and the victim, a four-year-old child. A four-year-old child cannot consent to sexual conduct. The victim here did not and could not have participated in the sexual conduct of her own free will.

*Id*. at 58.  In *State v. Dye,* 82 Ohio St.3d 323 (Ohio 1998), the Ohio Supreme Court held that the reasoning of *Eskridge* applies even to perpetrators who are not a parent or stepparent to a child victim.  *See also State v. Grant*, No. CA2014-03-005; CA2014-03-006, 2015 WL 871894, at *3 (Ohio App. 12th Dist. March 2, 2015).

Petitioner urges this Court to review his claim of insufficiency of the evidence in light of the language actually used by the trial court and without consideration of the Ohio Supreme Court's construction of Ohio law in *Eskridge* and *Dye*.  However, again, Petitioner never raised this particular argument before the state courts.  There, Petitioner argued only that inconsistent

and contradictory testimony of prosecution witnesses provided an insufficient basis for his convictions. *See Exhibit 15* to *Return of Writ*, ECF 9-2, PageID# 485-87; 623-24.  Again, this Court will not consider arguments raised for the first time before this Court.

Moreover, the state appellate court determined that the record established the use or threat of force as that term is defined under Ohio law.  This Court is bound by the state court's interpretation of its own laws.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); s*ee Gumm v. Mitchell,* 775 F.3d 345, 362 (6ᵗʰ Cir. 2014)(citing *Estelle* 502 U.S. at 68)("This Court should not reinterpret an issue of state law that has already been interpreted by the state courts); *Williams v. Smith,* No. 11-15163, 2014 WL 632437, at *5 (E.D. Mich. Feb. 18, 2014)("[O]n habeas review,  '[s]tate law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.'") (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)).

Claims two and four are without merit.

## Claim Three

In claim three, Petitioner alleges that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose DNA test results favorable to the defense prior to trial.  In addressing this claim, the state appellate court reasoned as follows:

> Steele argues that the failure of the state to provide him before trial with the results of DNA testing concerning four items taken from his living quarters at the Lyons' home was prejudicial error. Steele contends that the state withheld this evidence from him in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
>
> Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. *See* 373 U.S., at 87. The Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that,

had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine [ ] confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted).

In *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990), the Ohio Supreme Court rejected a claim that the state's failure to provide exculpatory information to the defendant prior to trial was a reversible *Brady* violation for three reasons. First, the Court noted that in *United States v. Agurs* (1976), 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342, the United States Supreme Court noted that the rule of *Brady* applies to situations involving the discovery, after trial, of information which was known to the prosecution but unknown to the defense. In *Wickline*, the alleged exculpatory records were presented during the trial, and therefore no *Brady* violation existed. 50 Ohio St .3d at 116, 552 N.E.2d 913. *Accord*, *State v. Hanna*, 95 Ohio St.3d 285, 767 N.E.2d 678, 2002–Ohio–2221, ¶ 82; *State v. Green*, 90 Ohio St.3d 352, 372, 738 N.E.2d 1208 (2000).

Second, the court in *Wickline* noted that Crim. R. 16(E)(3) provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

The court held that the appellant could have pursued less drastic means than seeking a new trial. *Id.* The appellant argued that no remedial order could have ensured his right to a fair trial because the leading witness against him had already testified. The court concluded that pursuant to Crim. R. 16(E)(3), the trial court was empowered to order the return of the witness and make her available for continued cross-examination. *Id.* at 117, 552 N.E.2d 913.

Finally, the *Wickline* court concluded that the appellant had failed to show how the outcome of his trial would have been different had the materials been disclosed prior to trial. *Id*. In determining whether the prosecution improperly suppressed evidence favorable to an accused, the evidence is material only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Id*., citing *State v. Johnston,* 39 Ohio St.3d 48, 529 N.E.2d 898(1988), paragraph 5 of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

As in *Wickline*, Steele was given access to the complete report during trial, and, therefore, a *Brady* violation did not occur. While it is unclear whether counsel looked at the report during the trial, had counsel done so when it was made available to him and believed the information therein was material, Steele could have asked the trial court to revisit the prior ruling sustaining Steel's request that the report not be admissible. "*Brady* applies only to material discovered after trial because the defendant, if he chooses to, can generally ensure that material discovered prior to or during trial will be entered into evidence and is, thus, not substantially prejudiced." *State v. Aldridge,* 120 Ohio App.3d 122, 146, 697 N.E.2d 228 (2nd Dist.1997).

At trial, Steele did argue that the DNA evidence did not match him. (6T. at 679). He further suggested that the DNA might belong to someone else from whom a sample had not been obtained for comparison. (*Id.* at 685). Thus, Steele has not demonstrated a reasonable probability of a change in the outcome had he been given the entire report prior to the start of the trial.

*State v. Steele*, 2012 WL 3574716, at *11-13.

In *Brady v. Maryland*, the United States Supreme Court held that the prosecution's suppression of favorable evidence after the accused's request for disclosure violates due process if the evidence is material to guilt or to punishment, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 86. Evidence is considered material "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

> [T]here is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene*, 527 U.S. 263, 281 (1999).

> [T]he materiality and prejudice prongs do not require a defendant to show that disclosure of the evidence would have ultimately led to an acquittal. Instead, the defendant must establish only that in the absence of the evidence he did not receive a fair trial, "understood as a trial resulting in a verdict worthy of confidence."

*Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014)(quoting *Kyles v. Whitley*, 514 U.S. 419, 434

(1995)).  "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule."

*O'Guinn v. Dutton*, 88 F.3d 1409, 1418 (6th Cir. 1996)(citing *United States v. Bagley).*

Petitioner complains that the State waited until September 6, 2011, at the close of the first

day of trial, to provide him with test results of DNA recovered from a couch cover, sleeping bag,

washcloth, and a flat and a fitted sheet located in Petitioner's living quarters.  The lab  reports

indicated that "[d]ifferential extraction of the couch cover. . . resulted in a mixture of at least two

individuals and is consistent with contributions from Joshua Steele."  *State v. Steele*, 2012 WL

3574716, at *2.  The State could not identify either the alleged victim or her siblings as possible

contributors.  The differential extraction of the washcloth resulted in a single DNA profile from

an unknown female; the differential extraction of the fitted sheet and flat sheet resulted in a

single DNA profile from the same unknown male.  The results did not establish that the alleged

victim, any of her siblings, or Petitioner was the source of DNA on the washcloth, the fitted sheet

or the flat sheet.  *Id*.

None of the foregoing evidence was presented at trial, pursuant to Petitioner's request.

Only the DNA test results obtained from a sleeping bag in the child's home, found to contain

semen and blood, were admitted at trial.  *Id*.  No probative DNA sample was obtained from the

sleeping bag.  *Id*.  Petitioner does not challenge the admission of this evidence.

Petitioner challenges the state appellate court's determination that *Brady* does not apply

to exculpatory evidence disclosed during trial.  He argues that the prosecution engaged in

"gamesmanship" by its late disclosure of DNA evidence because the DNA test results were dated

August 29, 2011 and therefore could have been provided to him prior to the start of trial on

September 6, 2011.  *Traverse,* PageID# 1514 (referring to exhibit attached to *Return of Writ*,

PageID# 245).  Petitioner also alleges that the prosecution's belated disclosure of the DNA test results prejudiced him because the prosecutor argued that the presence of semen on the sleeping bag, even though from an unknown source, supported the alleged victim's version of events, and because the late disclosure of DNA from an "unknown male" on the washcloth and fitted sheet prevented him from comparing the DNA sample with that of the victim's father, who Petitioner argued should have been considered a suspect.  *Id.*, PageID#  1515-16.

Petitioner has failed to rebut the presumption of correctness afforded the factual findings of the state appellate court.  *See* 28 U.S.C. § 2254(e).  These findings establish that, prior to trial, the prosecutor sought a continuance of the trial in order to provide Petitioner with the results of the DNA evidence. Petitioner objected to that request and the trial court agreed with Petitioner that the evidence would be inadmissible at trial.  The prosecution subsequently provided Petitioner with a copy of the DNA report after the end of the first day of trial.  Portions of that report were not favorable to Petitioner: the DNA obtained from the couch cover was consistent with contributions from Petitioner.  *State v. Steele*, 2012 WL 3574716, at *2.  Petitioner offers no support for his allegation that further testing would have provided exculpatory evidence.  In any event, there is no evidence that Petitioner sought a continuance in order to conduct further testing or even further cross-examination of the prosecution's expert witness.  Moreover, Petitioner addressed and minimized the DNA evidence at trial. *Trial Transcript*, *Vol. VI,* attached to *Return of Writ*, PageID# 1355 ("And what do we know before [sic] the DNA? It did not match the sample from Josh Steele, it didn't match. And that's undisputed, it was their expert who said it.").

A *Brady* violation occurs only where "undisclosed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Gumm*

*v. Mitchell*, 775 F.3d at 363 (quoting *Kyles v. Whitley*, 514 U.S. at 435)(citing *Smith v. Cain*, ——— U.S. ———, 132 S.Ct. 627, 630 (2012)). For all the foregoing reasons, this Court cannot conclude that the state appellate court was unreasonable in its conclusion that the State committed no violation of *Brady*.

Claim three is without merit.

**Recommended Disposition**

It is therefore **RECOMMENDED** that the petition for a writ of habeas corpus be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*

Norah McCann King
United States Magistrate Judge
May 18, 2015
